This is a suit brought by Olivia Shankle against the Tri-State Transit Company of *Page 715 
Louisiana, Incorporated, which operates a passenger bus line between the cities of Shreveport and Lake Charles, in Louisiana, for damages for personal injuries suffered by her when she was assaulted by the driver of the defendant company's bus on which she had been riding from Lake Charles to De Ridder, after its arrival at De Ridder, on the morning of May 8, 1938.
Her husband joined her as party plaintiff seeking to recover also for medical fees and expenses in connection with the treatment of her injuries and for other damages which he alleges in detail as being incidental thereto.
In the petition it is alleged that the plaintiff, Olivia Shankle, is a colored woman twenty-eight years of age, who has been employed as a public school teacher for twelve years in De Ridder in Beauregard Parish, and who enjoys the respect and confidence of the school authorities of that parish as well as that of the colored people whose children attend the school in which she teaches.
She recites that she lives in Lake Charles with her husband but her custom has been to spend the school week at De Ridder, riding on Monday mornings on a bus of the defendant company and returning the same way on Friday evenings. She avers that it has been her practice to have the bus stop on Monday morning at a cross-road outside the corporate limits of the city of De Ridder and about one mile from the bus station and to there alight and walk to the schoolhouse as it saved her distance and was more convenient for her.
She then alleges that on Monday morning May 8, 1938, when riding on the bus as a pay passenger, as usual, she pressed the button to notify the driver as they approached the cross-road so that he could stop the bus and leave her off. On noticing that the buzzer was not working she called to the driver politely but he paid no attention to her. Thereupon a lady sitting immediately behind him directed his attention by touching him and informing him that a passenger wanted to get off but the driver said in a loud voice so that she could hear, "Oh, let her ride to the station," and he refused to stop.
She then sets out that on arriving at the bus station, before surrendering her ticket and receiving her luggage, she stepped out of the bus onto the station platform and asked the driver of the bus if the manager of the line no longer permitted him to stop at the cross-road where she customarily alighted and he replied that he "stopped where he wanted to." To this remark she then replied that she thought he stopped where passengers wanted to get off, whereupon he told her to "shut up her mouth." To this remark she then replied that there was no law to make her do so and without further provocation he struck her with his closed fist on the left side of her face, near the eye. The blow felled her to the cement pavement of the bus station and caused the injuries she complains of. These she alleges were the blackening of the left eye which left the sight impaired and an injury to the drum of her left ear. For these injuries she is asking $5,000 in damages and in addition she claims $5,000 for the lessening of her future earning capacity as a school teacher as a result of such impairments. Besides, she asks for $5,000 for humiliation, mental pain and physical suffering caused by the unprovoked assault.
The husband, Everett Shankle, seeks to recover $5,000 in his own behalf, of which $350.50 he alleges is for medical expenses for treatment of his wife's injuries and the balance for the loss of her companionship and affection on account of her ill health and nervousness brought on by the said injuries.
The defendant, in answer, admits that the plaintiff, Olivia Shankle, was a pay passenger on its bus which was in charge of its driver and operator, Sam Brickley, on the morning of May 8, 1938 and then avers that upon reaching the bus station at De Ridder, after surrendering her ticket and having alighted from the bus, she became impertinent and vulgar in her manner, talking in a loud and threatening voice and after being warned repeatedly by the driver to stop, finally provoked him into slapping her. It is further alleged that all of this occurred after she had been discharged as a passenger, and that the matter was a personal one between her and the bus driver, who at the moment was no longer acting in the scope of his employment. In the alternative defendant pleads contributory negligence on the part of the plaintiff in having provoked the assault.
As a further alternative plea the defendant then called the operator of its bus, Sam Brickley, in warranty. This call and plea however was met with an exception of no cause or right of action which was sustained by the trial judge. No appeal was taken from that part of the judgment dismissing *Page 716 
the call and that issue is not before this court.
After trial in the court below there was judgment in favor of the plaintiff, Olivia Shankle, in the sum of $250 and in favor of her husband, Everett L. Shankle, in the sum of $48. Both sides moved for a rehearing in the lower court which was refused, whereupon a devolutive appeal was taken by the plaintiff, Olivia Shankle, in which she seeks to have the amount of the award in her favor increased. The defendant has answered the appeal asking that the judgment be reversed.
The learned trial judge has favored the record with a written opinion in which he carefully analyzed the facts and announced his findings. Considerable stress had been placed by defendant on the fact that there is a city ordinance of the city of De Ridder prohibiting a bus from stopping within the corporate limits of the city at any place other than the bus station. It was positively shown however that the crossing at which plaintiff desired to leave the bus, and where she had been accustomed to alight, was outside the city limits and that even though the buzzer was not working that morning, which after all was because of his own neglect of duty in having failed to connect it, the driver had had sufficient warning of plaintiff's intention to have the bus stop. As properly found by the district judge this point has no important bearing on the case unless it be to show to some extent the state of mind of both parties at the time the bus reached the station when the controversy took place.
After commenting on the fact that the plaintiff is a slightly built woman, the testimony being that she weighs one hundred and ten pounds, and that the bus driver is a strong, well built man, who it is shown weighs over two hundred pounds, the district judge states:
"There is no evidence that the plaintiff made the slightest hostile demonstration toward assaulting the driver. The driver's own account of the incident is as follows:
"`She (referring to the plaintiff) was talking to Mr. Marshall, bawling me out to him, to use that expression; she was asking Mr. Marshall why is it, if the management couldn't have the buses stop there, in a very impudent manner, and her manner had been somewhat unpleasant all the way from the time she wanted to get off. I was hoping I could discharge her without any trouble. I told her I had heard all I wanted to hear from her, then is when she replied back and I struck her.'"
"Counsel then asked the driver what she replied back and the driver answered: `I don't remember exactly, I thought she said I can talk when I damn please, nobody can make me shut my mouth'. And being asked further how this remark affected him, he answered: `It made me very angry, as it would any Southerner.'
"The testimony of the plaintiff as to what was said and done is as follows:
"`He (referring to the driver) was speaking to Mr. Marshall, the ticket agent, when he stopped talking, I said "pardon me please, is it that the manager of this bus doesn't want you to stop at that cross-road any more"; he said "I stop where I want to stop"; I said "beg pardon, I thought you stopped where the passengers wanted to stop"; he said "you ride this bus if you want to and if you don't let it alone, you shut up, if you don't I will break you." I said "there isn't any law that would make me shut up", and that is all that was said until after the blow.'
* * * * * *
"After considering carefully the evidence in this record and all the facts and circumstances disclosed in the trial of this case this Court can not feel that the driver of this bus was justified in law under any theory of the case in making such an attack on the plaintiff. The Court takes into consideration the fact that the plaintiff's manner as well as her language on this occasion might have been to some extent irritating to the driver of the bus; but while this may be true the failure or the refusal of the driver of the bus to stop at the cross-roads where the plaintiff had been accustomed to alight apparently constituted or at least contributed to a considerable extent to a provoking cause or excuse for this irritation of manner on the part of the plaintiff. The court further takes into consideration the fact that the plaintiff was a colored woman and the further fact that the bus driver `was a Southerner', but these facts under our law would not justify an assault. It may be true that if the language and conduct of the plaintiff on that occasion were so irritating and so exasperating in character that the driver was bereft of his power to control himself to such extent as to unfit him to act toward a passenger in the manner usually required of him, then in such case the defendant might be relieved of its liability *Page 717 
on the theory that there was a sufficient provoking cause for such an assault; but clearly the language and the conduct of this woman was not such as would be calculated to deprive any man of good sense and judgment, of his sense of reason and the power to control himself, and to cause him to forget the ordinary duties he owes to a passenger. In the opinion of this court the most that can be made of it is that such language and conduct might be considered for what it is worth in mitigation of damages. There was apparently no danger of an attack on the driver by the plaintiff such as would justify the driver in resisting any unlawful physical attack on him. This Court can think of no theory of the case under which, under the facts as disclosed in this record, the driver of this bus would be warranted in making such an assault on the plaintiff."
We find ourselves in accord with all that is stated by the trial judge and like him, we experience but little difficulty in reaching the conclusion, under the evidence, that at the time of the assault, the driver of the bus was still acting in the course and within the scope of his employment.
It is urged that as the passenger's ticket had been surrendered and she had already been discharged from the bus when the assault was made, the contract of carriage had terminated and the act of the bus driver in engaging in the difficulty was his personal affair with which his employer had nothing to do and should not be held accountable.
There is conflict in the testimony on the point about the time of delivery or surrender of the ticket but it is definitely shown that the altercation leading up to the actual assault took place on the platform of the bus station, immediately after the passenger had alighted from the bus and before she had received her luggage. She could not be considered as having been entirely discharged as a passenger until her baggage had been delivered to her and therefore the contract of carriage was not yet completed. Besides, the assault was but the culmination of the difference which arose between her and the bus driver when he refused to stop the bus on the verbal request made to him after it was discovered that the buzzer signal was not connected.
We are convinced of the correctness of the finding of the trial judge that the assault took place while the bus driver was still acting within the scope and in the course of his employment.
The duty of a carrier to safely transport and discharge a pay passenger is too well known to have to be commented on at any length in this case. Beyond the duty to safely transport and discharge him, the contract of carriage implies that he be treated with respect and that he be protected from violence and insult and especially from acts of personal violence by the carrier's servants and employees. In American Jurisprudence, Vol. 10, p. 261, sec. 1443, it is stated that "it is well settled that passengers have the right to be treated by the servants and agents of the carrier with kindness, courtesy and due respect and to be protected against insult, indignity, and abuse from such employees," and in sec. 1447, p. 263, it is stated that "a contract of transportation implies protection to the passenger against acts of personal violence by the agents or employees of the carrier." The same authority in sec. 1449, p. 265, states that there are two views regarding the effect of insulting language or provocative conduct on the part of the passenger and it recognizes that under one of those views such language or conduct toward the carrier's employee "may relieve the carrier from liability for injuries resulting from the assault." This latter view, it is stated, "proceeds largely on the theory that the passenger has been guilty of contributory negligence in unfitting the employee for the proper discharge of his duties."
Assuming that the latter view just referred to is the one which prevails in this State, as pointed out in the findings of the trial judge, the language and the conduct of the passenger in this case was not of a kind and nature to provoke the bus driver to the point of forgetting his position and letting his temper and poorer judgment get the better of him, and under no other theory we can think of could his action be defended and justified. He failed in the duty which the law clearly imposes on him and for his action and conduct his employer was properly held liable in damages.
After considering all the facts and circumstances in the case we have concluded that the amount awarded the plaintiff, Olivia Shankle, in the judgment appealed from is too small and are of the opinion that it should be increased. The blow which she was struck necessarily had to be a violent one as it knocked her down on the concrete floor of the station platform and produced a marked swelling on her face. It was necessary for her to see a doctor and to *Page 718 
be away from her duties in the class room for several days. Considering the relative differences between them, difference in sex, in weight, and in strength, the assault may well be said to have been an aggravated one. Besides it occurred in a public place and in the presence of other persons.
According to the evidence plaintiff is well thought of by the school authorities of the parish in which she teaches. She otherwise seems to enjoy a good reputation, and no doubt this unfortunate incident caused her considerable embarrassment, humiliation, and mental suffering. She has not supported her claim that her injuries caused some impairment to her left eye and her left ear drum. The damages will have to be limited to the items which we have discussed and for all of which we think that she is entitled to an award of $500. The judgment will be amended accordingly.
For the reasons stated it is now ordered that the judgment appealed from be and the same is hereby amended by increasing the amount of the award in favor of the plaintiff, Olivia Shankle, from the sum of $250 to the sum of $500, and that as thus amended it be affirmed. Defendant-appellee to pay all costs of this appeal.
DORE and OTT, JJ., concur.